IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JEFFREY ROGERS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No: 11-4088-CV-C-NKL |
| v. | ) | |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

SUGGESTIONS IN OPPOSITION TO MOTION TO DISMISS

Plaintiff opposes Defendants' motion to dismiss. In enacting Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*.,Congress abrogated any immunity the State of Missouri might have. In addition, Defendants are not immune from suit under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), because it was enacted pursuant to Congress's Spending power. What is more, because Plaintiff seeks only prospective relief, *Ex parte Young* alleviates any Eleventh Amendment immunity. Finally, the assertions in Plaintiff's Complaint are adequate to state a cause of action under the ADA and Section 504. The motion to dismiss should be denied.

I. Background

Jeffery Rogers currently uses a manual wheelchair and has been assigned an inmate "pusher" within Jefferson City Correctional Center. Complaint (Doc. # 1) at ¶¶ 15, 17. Because Rogers is wholly reliant on his pusher, he is not able to fully and independently participate in services, programs, and activities within JCCC at the same level of independence as other inmates. *Id.* at ¶¶ 15-16. Rogers could independently participate in the services, programs, and

1

activities at JCCC if he were allowed to utilize the electric wheelchair he has purchased. *Id.* At

least one other inmate at JCCC is allowed to utilize his electric wheelchair at JCCC. *Id.* at ¶ 18.

II. Argument

A.     Congress Validly Authorized Plaintiff's Claims Under the ADA and Section 504

1.     Congress Validly Authorized Plaintiff's Section 504 Claim Pursuant to its Spending Power

Although Defendants assert Eleventh Amendment immunity as a bar to Plaintiff's suit,

they offer no argument to suggest that Section 504 is invalid.  Section 504 was enacted pursuant

to Congress's Spending power, as well as its power under Section 5 of the Fourteenth

Amendment.  The Eighth Circuit has ruled that Congress validly used its Spending power to

authorize suits against states under Section 504. *Jim C. v. United States*, 235 F.3d 1079 (8th Cir.

2000) (*en banc*), *cert. denied sub nom. Arkansas Dep't of Educ. v. Jim C.*, 533 U.S. 949 (2001).

Accordingly, this Court need not decide whether Congress also validly authorized claims against

states or state officials under Section 5 of the Fourteenth Amendment. Plaintiff's Section 504

claim is validly authorized under Congress's Spending power.

2.     Congress Validly Authorized Plaintiff's ADA Title II Claim Pursuant to its Power under Section 5 of the Fourteenth Amendment

Plaintiff seeks only prospective relief under Title II of the ADA.  "*Ex parte Young* and its

progeny teach that a private party may seek prospective injunctive relief in federal court against

a state official, even if the state is otherwise protected by Eleventh Amendment immunity."

*Randolph v. Rodgers*, 253 F.3d 342, 345 (8th Cir. 2001)(finding that Eleventh Amendment

immunity does not bar suit for prospective relief under ADA in prison context).  "[A] person

seeking purely prospective relief against state officials for ongoing violations of federal law may

sue under the 'legal fiction' of *Ex parte Young* … despite the text of the Eleventh Amendment."

2

*Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). The Eighth

Circuit has held "private individuals can sue state officials for injunctive relief under the ADA

by using *Ex parte Young.*" *Gibson v. Arkansas Dept. of Correction*, 265 F.3d 718, 722 (8th Cir.

2001)(Title I of ADA). Because Plaintiff seeks only prospective relief, no further analysis is

required.

Aside from *Ex parte Young*, Congress has validly abrogated Missouri's Eleventh

Amendment immunity.[1] Congress may abrogate the States' Eleventh Amendment immunity

"only by stating unequivocally its desire to do so and only pursuant to a valid exercise of

constitutional authority." *Constantine v. Rectors and Visitors of George Mason Univ.,* 411 F.3d

474, 484 (4th Cir.2005) (*citing Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 55 (1996)).

Congress unequivocally stated its desire to abrogate the States' Eleventh Amendment immunity

in passing Title II of the ADA. *See Tennessee v. Lane,* 541 U.S. 509, 518 (2004). Thus, the only

question "is whether Congress had the power to give effect to its intent." *Id.*

First, the Supreme Court has held that, at a minimum, Congress validly uses its

Fourteenth Amendment authority to authorize Title II claims for conduct that also violates the

Fourteenth Amendment. *United States v. Georgia*, 126 S.Ct. 877, 881-82 (2006). The Fourteenth

Amendment commands "that 'all persons similarly situated should be treated alike.'" *Lane*, 541

U.S. at 522 (quoting *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985)). By

denying Rogers the opportunity to independently participate in JCCC's services, programs, and

activities, Defendants are not providing him equal access afforded to non-disabled inmates or

inmates with disabilities that are independently mobile. In addition, Rogers is treated differently

---

[1]    In enacting the ADA, Congress invoked its power to regulate interstate commerce as well as its
power under Section 5 of the Fourteenth Amendment. 42 U.S.C. § 12101(b)(4). Defendants have not challenged
Congress's Commerce authority in this lawsuit. Thus, their challenge, even if successful, could not preclude
Plaintiff's ADA claim.

3

than inmates who are allowed to electric wheelchairs so that they might participate in JCCC's

services, programs, and activities independently.  In addition, prison official's deliberate

indifference to an inmate's serious medical needs violates the Eighth Amendment, which is

incorporated to the States by the Fourteenth Amendment. *See Estelle v. Gamble*, 429 U.S. 97,

104 (1976).  This Eighth Amendment principle applies in cases challenging harm to inmates with

disabilities. *See LaFaut v. Smith*, 834 F.2d 389 (4th Cir. 1987).  Courts have held that prison

officials violate the Eighth Amendment when they withhold assistive devices from inmates.  *See,*

*e.g., Cummings v. Roberts,* 628 F.2d 1065, 1068 (8th Cir. 1980) (finding that denying injured

prisoner access to wheelchair for three days states a claim of cruel and unusual punishment).[2]

Second, even a failure to suggest, or prove, a constitutional violation would not end the

sovereign immunity inquiry. Pursuant to § 5 of the Fourteenth Amendment, Congress may

"enact prophylactic legislation prohibiting conduct that is 'not itself unconstitutional,' [however]

it may not substantively redefine Fourteenth Amendment protections." *Constantine,* 411 F.3d at

484 (*quoting City of Boerne v. Flores,* 521 U.S. 507, 519 (1997)). Thus, even if the conduct that

Plaintiff alleges "does not, in itself, violate the constitution, under *Georgia,* 126 S.Ct. at 878,

[courts] must determine 'whether Congress's purported abrogation of sovereign immunity as to

that class of conduct is nevertheless [a] valid'" exercise of its prophylactic enforcement powers

under § 5 of the Fourteenth Amendment. *Klingler v. Director, Dep't of Revenue, Mo.* 455 F.3d

---

[2]      The Eighth Circuit is not alone in finding an Eighth Amendment violation where assistive devices have
been withheld from inmates with disabilities. *See Wheeler v. Butler*, 209 F. App'x 14 (2d Cir. 2006) (summary order)
(ordering district court to evaluate whether prison official was deliberately indifferent to prisoner's medical needs in
depriving inmate of hearing aids); *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (finding that failure to provide
eyeglasses can rise to Eighth Amendment violation); *Large v. Washington County Detention Center*, 915 F.2d 1564,
1990 WL 153978, *1 (4th Cir. 1990) (unpublished table decision) (finding that deliberately indifferent deprivation
of hearing aids may violate Eighth Amendment and remanding for further consideration); *Hunt v. Dental Dep't*, 865
F.2d 198, 200–01 (9th Cir. 1989) (holding that after loss of inmate's dentures in prison riot, prison officials' failure
to take any measures for three months to relieve inmate's pain until new dentures could be fitted could constitute
deliberate indifference); *Newman v. Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974) (unavailability of eyeglasses and
prosthetic devices violates Eighth Amendment).

4

888, 894 (8th Cir. 2006).  In order to legislate under Section 5 of the Fourteenth Amendment,

Congress must have acted based on a history of constitutional violations supporting the need for

prophylactic legislation, and the legislation must be an appropriate response to that history. *Lane*,

541 U.S. at 523-33; *see also Flores*, 521 U.S. at 520 ("There must be a congruence and

proportionality between the injury to be prevented or remedied and the means adopted to that

end."). Both prongs of this test are met here.

      The *Lane* opinion makes clear that Congress acted based on a sufficient history of

constitutional violations to support Title II.  The Court in *Lane* concluded that "Congress enacted

Title II against a backdrop of pervasive unequal treatment in the administration of state services

and programs, including systemic deprivations of fundamental rights." 541 U.S. at 523-33. The

*Lane* Court also relied on Congress's finding in the ADA that "discrimination against individuals

with disabilities persists in such critical areas as . . . education, transportation, communication,

recreation, institutionalization, health services, voting, and access to public services." *Id.* at 529

(quoting 42 U.S.C. § 12101(a)(3)). The Court stated:

> This finding, together with the extensive record of disability
> discrimination that underlies it, makes clear beyond peradventure
> that inadequate provision of public services and access to public
> facilities was an appropriate subject for prophylactic legislation.

*Id.* Thus, the Court concluded that the record of disability discrimination underlying all of Title

II of the ADA is a sufficient record for purposes of Congress's authority to legislate under

Section 5 of the Fourteenth Amendment.  "After *Lane*, it is settled that Title II was enacted in

response to a pattern of unconstitutional disability discrimination by States and nonstate

government entities with respect to the provision of public services. This conclusion is sufficient

to satisfy the historical inquiry into the harms sought to be addressed by Title II." *Constantine*,

5

411 F.3d at 487; *Ass'n for Disabled Americans, Inc. v. Florida Int'l Univ.*, 405 F.3d 954, 958 (11th Cir. 2005) (same).

As to the second prong, the application of Title II to access to the services, programs, and activities offered by JCCC is a congruent and proportional response to the history of discrimination in this area. The standard imposed by the ADA is extraordinarily similar to the standard imposed by the Equal Protection Clause of the Fourteenth Amendment. The ADA provides that a public entity may not impose eligibility criteria that tend to screen out people with disabilities from full and equal enjoyment of a service, program, or activity, unless those criteria are shown to be necessary for the provision of the service, program, or activity. 28 C.F.R. § 35.130(b)(8). Similarly, the Equal Protection Clause bars a public entity from denying a class of individuals the right to vote unless the exclusion can be shown to be narrowly tailored to a compelling government interest. *Dunn v. Blumstein*, 405 U.S. 330, 337 (1972). Given the close similarity of these standards, the ADA is certainly not "so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior." *Flores*, 521 U.S. at 532. Instead, it is "a reasonable prophylactic measure, reasonably targeted to a legitimate end." *Lane*, 541 U.S. at 533.[3] Thus, Congress validly authorized the ADA claim in this case using its power under Section 5 of the Fourteenth Amendment.

B.      Plaintiff has stated a cause of action under the ADA and Section 504

Prisoners are protected by Section 504 and by Title II of the ADA. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) (ADA); *Onishea v. Hopper*, 171 F.3d 1289 (11th Cir. 1999) (en banc) (§ 504); *Bonner v. Lewis*, 857 F.2d 559 (9th Cir. 1988) (§ 504).

---

[3]      In the context of the treatment of prison inmates with disabilities, the ADA is also reasonable prophylactic legislation to prevent violations of the Eighth Amendment.

6

"The standard for a district court to employ in ruling in response to a motion to dismiss is clear. A district court must accept the allegations contained in the complaint as true [] and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Breedlove v. Earthgrains Baking Cos.*, 140 F.3d 797, 798-99 (8th Cir. 1998) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Factual allegations need only be more than speculative to be assumed true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[A]ll reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Breedlove*, 140 F.3d at 799 (relying on *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)).[4] "Dismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Breedlove*, 140 F.3d at 799 (quoting *McCormack v. Citibank, N.A.*, 979 F.2d 643, 646 (8th Cir. 1992)). "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1976)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). At this stage the Court must accept as true all of the factual allegations in the complaint and determine whether the allegations show plaintiff might be entitled to relief. *Twombly*, 550 U.S. at 555. A plaintiff need only provide sufficient factual information to provide the grounds upon which his claims rise and to raise a right to relief above a speculative level. *Id.*; *Iqbal*, 129 S.Ct. at 1949. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and

---

[4]      "Twombly and Iqbal did not change this fundamental tenet of Rule 12(b)(6) practice." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 595 (8th Cir. 2009).

7

'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer*, 416 U.S. at 236).

1.  Plaintiff has stated a cause of action under Section 504

The Eighth Circuit has explained that to prevail on a Section 504 claim, "a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds, and (3) he was discriminated against based on his disability." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998)(citing 29 U.S.C. § 794(a); *Layton v. Elder,* 143 F.3d 469, 472 (8th Cir.1998)).  "The reach of this statutory language is demonstrated by the definition of 'program or activity' to include 'all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government.'" *Id.* (quoting 29 U.S.C. § 794(b)).  "Plaintiffs who prevail on Rehabilitation Act claims are entitled to the full spectrum of legal and equitable remedies needed to redress their injuries." *Id.* (citing *Lue v. Moore,* 43 F.3d 1203, 1205 (8th Cir.1994); *Rodgers v. Magnet Cove Public Schools,* 34 F.3d 642, 644 (8th Cir.1994)).

Defendants suggest that Rogers's claim must be dismissed to the extent it is based on a medical treatment decision.  Assuming, *arguendo*, they are correct, their assertion is inapplicable to this case.  Medically, there is no question Rogers needs a wheelchair and that he cannot use a manual wheelchair independently.  Doc. # 1 at ¶¶ 13-14, 17. The denial of use of the electric wheelchair is a policy decision made by JCCC administrators, not medical personnel prescribing treatment. *Id.* at ¶ 17.

Defendants next claim that Rogers has not shown that assigning him a pusher, rather than allowing him to operate his wheelchair independently, is not adequate as a reasonable accommodation.  That a requested accommodation would constitute an undue burden is an

8

affirmative defense Defendants might try to demonstrate under Section 504. *Gorman*, 152 F.3d at 911. At this initial stage, Rogers is not required to disprove potential affirmative defenses.

The balance of Defendants' objection to Rogers's Section 504 claim is that he has not provided a sufficient factual basis for his claim that he is denied full access to JCCC's programs, activities, and services. Rogers has presented a facially plausible claim that Defendants' denial of a wheelchair that would allow him to independently participate in programs, activities, and services, including dining hall, medical services, educational programs, use of the library, use of the gym and the "yard" for recreation, social meetings, and religious activities and functions, provides him less access to those programs, activities, or services. Doc. # 1 at ¶¶ 13-17.

This appears to be a case of first impression. Defendants' citation to an unpublished decision of the Sixth Circuit does not dictate the result in this case. In that case, the Court found that the plaintiff "did not allege or show that the defendants deprived him of any service, program, or activities because of his disability, and his disputes with staff and his inmate assistants resulted in only isolated instances where he missed meals or privileges." *Moore v. Curtis*, 68 F.App'x 561, 563 (6th Cir. 2003). That case was decided on summary judgment after the parties had an opportunity to conduct discovery. It is distinguishable because Rogers *does* allege, and expects to show, that he has been deprived of full participation in services, programs, and activities. This case is also distinguishable because Defendants allow at least one other inmate to independently access JCCC's services, programs, and activities through use of an electric wheelchair.

Plaintiff has pleaded sufficient facts to state a cause of action under Section 504. In the alternate, Plaintiff requests leave to amend his complaint.

9

2. Plaintiff has stated a cause of action under Title II of the ADA

Title II of the ADA prohibits discrimination in the services of public entities. 42 U.S.C. § 12132. It "provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Gorman*, 152 F.3d at 911-12 (quoting 42 U.S.C. § 12132). "A 'qualified individual with a disability' is broadly defined as any person who 'meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Id*. at 912 (quoting 42 U.S.C. § 12131(2)). "The term 'public entity' is defined to be 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Id.* (quoting 42 U.S.C. § 12131(1)).

The ADA is similar in substance to Section 504, except that it has no federal funding requirement. Cases interpreting the ADA and Section 504 are applicable to claims under either and interchangeable. *Allison v. Department of Corrections,* 94 F.3d 494, 497 (8th Cir.1996). The motion to dismiss should, therefore, be denied for the same reasons as discussed with respect to Rogers's Section 504 claim.

Plaintiff has made sufficient allegations to state a cause of action under Title II of the ADA. In the alternate, Plaintiff requests leave to amend his complaint.

III. Conclusion

For the foregoing reasons, Plaintiff requests this Court deny Defendants' motion to dismiss. In the alternate, should this Court determine that Plaintiff has not asserted a sufficient factual basis to support his claims, Plaintiff seeks leave to amend his complaint.

10

Respectfully submitted,

AMERICAN CIVIL LIBERTIES UNION
OF EASTERN MISSOURI

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827
GRANT R. DOTY, #60788
454 Whittier Street
St. Louis, Missouri 63108
(314) 652-3114
Fax: (314) 652- 3112
tony@aclu-em.org
grant@aclu-em.org

ATTORNEYS FOR PLAINTIFF

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was served by operation of the Court CM/ECF system to the following on June 1, 2011.

CHERYL ANN SCHUETZE
ASSISTANT ATTORNEY GENERAL
P.O. Box 899
Jefferson City, MO 65102

/s/ Anthony E. Rothert